IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NOTHERN DIVISION

RECEIVED

2007 JUL 13 A 9: 38

| | |
|---|---|
| STEVE ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:06-cv-00707-ID-CSC |
| | ) |
| MERCHANTS FOODSERVICE, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Steve Adams, in the above-styled cause, by and though the undersigned counsel of record, and submits this, his Response in Opposition to Defendants' Motion for Summary Judgment, as follows:

**INTRODUCTION AND PROCEDURAL HISTORY**

The Plaintiff filed his Complaint in the instant matter on June 29, 2006, in the Circuit Court of Chilton County, Alabama, (Civil Action No. CV-6-204B) against Defendants, Merchants Foodservice, Don Suber, Andy Mercier, and Hal Henson[1]. Defendants filed their Notice of Removal, removing the instant matter to the United States District Court for the Middle District of Alabama, on August 9, 2006. The Defendants filed their Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and Evidentiary Submissions in Support of Summary Judgment on or about June 28, 2007. The Plaintiff's Response to the same is due to be filed on or before July 17, 2007, per this Court's Order dated July 2, 2007.

---

[1] Defendants' Notice of Removal, dated August 9, 2006, states, in footnote 1 on page 2, that "[t]he summons issued to defendants Suber and Mercier indicates that they were served with the Complaint on June 10, 2006." As such, Defendants' contention that service was not properly perfected on Defendants Suber and Mercier is wholly without merit based on their own admission. In addition, the Defendants' Notice of Removal states in paragraph 1, that "...[Defendants Suber and Mercier] received notice of the Complaint after July 10, 2006."

## STATEMENT OF FACTS

On or about August 15, 2004, Plaintiff, Steve Adams, was contacted by the Defendant, Merchants Food Services (herein Defendant Merchants) about possible employment with Defendant Merchants. Defendant Merchants contacted Plaintiff while he was still employed with Sysco Foods. (Affidavit of Steve Adams, ¶ 1, attached hereto as Exhibit B). Defendant Merchants persistently pursued Plaintiff, and he finally agreed to an interview once he learned of the potential salary with the new position. (*Id.* at ¶ 2).

Defendant Hal Henson (herein Defendant Henson), General Manager, Defendant Andy Mercier (herein Defendant Mercier), Corporate Vice President, and Don Suber (herein Defendant Suber), Corporate President, interviewed Plaintiff on August 28, 2004. (Affidavit of Steve Adams, ¶ 3). During the interview, Defendants Henson, Mercier, and Suber made representations about certain aspects of the employment to the Plaintiff, including, but not limited to, the following:

  a. Plaintiff would only be required to work 8 to 8.5 hours a day or 40 to 42 hours a week;
  b. Plaintiff would have flexibility in setting his own hours;
  c. Plaintiff would only have to work a few nights on the night shift to get acquainted with that shift and the crew working that shift;
  d. Plaintiff would only have to work two (2) Saturdays per year for the purpose of physical inventory, and if he did have to work a Saturday for anything other than the purpose of the inventory, Plaintiff would be compensated with a day off; and

2

    e. Plaintiff was told that he would not have to worry about vacation time at Merchants and that he would not have to wait the usual 12 months before receiving time off, since he was giving up 17 days of vacation a year with his then current employer, Sysco – Defendant Henson told Plaintiff that he would allow Plaintiff to take vacation time.

(Affidavit of Steve Adams, ¶ 3).

After an official offer of employment, including salary, was made to Plaintiff, he decided to accept the offer extended by Defendant Merchants, based on the aforementioned representations made by the Defendants to him. (Affidavit of Steve Adams, ¶ 4).

Once Plaintiff accepted employment with Defendant Merchants and began his tenure there, Plaintiff learned that the representations that Defendants had made to him during the interview were false and misleading, as evidenced by, but not limited to, the following:

    a. Throughout his 10.5 month employment with Merchants, he was required to work 9 to 9.5 hours a day;

    b. He was not allowed the flexibility of setting his own hours;

    c. Throughout his employment with Merchants, he worked a total of 10 weeks on the night shift;

    d. Throughout his employment with Merchants, he was required to work a total of 8 Saturdays (6 more than what he was told during the interview),

without being compensated either monetarily or with any time off from work, as he was promised; and

e. Throughout his employment with Merchants, he was not allowed any time off, as was promised during my interview.

(Affidavit of Steve Adams, ¶ 5).

In short, the Plaintiff was lied to about the job and its conditions. These lies made the Plaintiff give up a great job. (Affidavit of Steve Adams, ¶ 6).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

"[I]f the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989); *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1021-22 (11th Cir.1988). "[T]he substantive law will identify which facts are material"; the district court "must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 248, 254, 106 S.Ct. at 2513. The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Id.* at 255, 106 S.Ct. at 2513-14; *Bannum*, 901 F.2d at 996; *Livernois*, 837 F.2d at 1022. If, so viewed, reasonable jurors could find a verdict for the nonmoving party under the substantive evidentiary standard, the nonmoving party can defeat

4

summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Cable/Home Communication v. Network Productions,* 902 F.2d 829, 841 (11th Cir.1990); *Carlin Communication, Inc. v. Southern Bell Tel. & Tel.,* 802 F.2d 1352, 1356 (11th Cir.1986).

The instant case presents genuine issues of material facts. The Plaintiff has alleged that the Defendants fraudulently misrepresented material facts regarding the nature of the position being offered to him, the hours that said position would require, and the conditions in which he would be working, as well as the bonuses he would receive. The Plaintiff did not pursue the Defendants for a position with Merchants, the Defendants pursued the Plaintiff. The Plaintiff was happily employed at SYSCO when he was contacted regarding the position at Merchants. The Defendants fraudulently misrepresented material facts regarding the nature of the position being offered to the Plaintiff and the Defendants knowingly suppressed their fraudulent misrepresentations, causing the Plaintiff to rely to his detriment on the misrepresentations made to him by the Defendants. As such, the Defendants' Motion for Summary Judgment should be denied.

## ARGUMENT

### I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIMS.

The Alabama Supreme Court was asked to answer certified questions by the United States District court for the Northern District of Alabama, in the case of *Kidder v. AmSouth Bank,* 639 So.2d 1361 (Ala. 1994), regarding the ability of an at will employee to maintain an action against her employer for fraudulent inducement. The Alabama Supreme Court answered that not only could an employee maintain an action for alleged fraud in inducement of employment based upon alleged misrepresentations as to working conditions; but that the

employee would also be entitled to damages for all injuries proximately caused by such misrepresentations. *Id.*

In *Kidder*, the Plaintiff was employed by AmSouth Bank as an employee at will. *Id.* at 1362. The Court allowed the Plaintiff to maintain her action for fraud in the inducement based upon misrepresentations made prior to her employment. *Id.* According to the *Kidder* Court, the elements of actionable fraud based upon misrepresentation are: 1) a duty to speak the truth; 2) a false representation of a material existing fact made intentionally, recklessly, **or innocently**; 3) action upon the false representation by the plaintiff; and 4) loss, harm, or damage proximately resulting from the false representation. *Id.* (emphasis added). Although the *Kidder* Court did not address the merits of the plaintiff's claims of alleged misrepresentations, the Court did state that, the "elements of fraud were met when Kidder gave up her former employment, having agreed to work for AmSouth based on its alleged misrepresentations." *Id.* at 1363.

In the instant action, the Defendants made their misrepresentations to the Plaintiff prior to his employment, in fact, like the facts in the *Kidder* matter, those misrepresentations were what induced the Plaintiff to leave his employment with SYSCO, and accept the position with Merchants. Thus, the Plaintiff gave up his former employment, having agreed to work for Merchants based on its misrepresentations. Therefore, the Defendants' Motion for Summary Judgment should be denied.

**<u>Defendants' Duty to Speak the Truth</u>**

The Defendants had a duty to speak the truth during the course of the interview process. The Plaintiff did not pursue the Defendants for employment, it was the Defendants that pursued the Plaintiff. (Deposition of the Plaintiff, Steve Adams, "Plaintiff's Depo.", attached hereto as Exhibit A, pg. 67,. ln 13-23; pg. 68, ln 1-23; pg. 69, ln 1-17) The Plaintiff was honest about

what it would take for him to consider leaving his then current employer, SYSCO. (Plaintiff's Depo., pg. 75, ln 7-23; pg. 76, ln 1-5) The purpose of the interview process with the Plaintiff was for the Defendants to induce him away from his then current job, and convince him to come and work for Merchants. As such, the Defendants had a duty to speak the truth to the Plaintiff regarding the conditions of employment, and the Defendants breached this duty by misrepresenting the working conditions, the hours that he would have to work, the days he would have to work, the amount of vacation time he would receive, and the amount of bonuses he would likely receive.

**<u>Defendants' false representation of a material existing facts were made intentionally, recklessly, or innocently</u>**

The Defendants knew at the time that their representations to Plaintiff were made that they were false. The Defendants knew that the hours the Plaintiff would be required to work, were not going to be similar to those that he was working at SYSCO, due to the fact that the Defendants were aware of the high turnover rate of their hourly employees, there was no way they would have been able to guarantee the Plaintiff that his hours would be similar to those that he was then working because the situation at the warehouse was so unstable. (Merchants Foodservice Employee Turnover Analysis Report, attached as an Exhibit 19 to Plaintiff's Deposition). Further, the Defendants knew that the Defendant would be required to work more Saturdays that were discussed during the interview process due to the unstable situation in the warehouse and the high turn over rate of the hourly employees. In addition, the Defendants knew that the warehouse was in an unstable state, they knew that there were problems keeping employees due to the high turn over rate. The Defendants also knew that there was no way that the Plaintiff would be able to have the vacation time that he was lead to believe that he could have. The Defendants knew of the company's policy on the accrual of vacation time for

employees at the time that they conducted the interview process with the Plaintiff, yet according to the Defendants at this time, the policy would not be strictly enforced on the Plaintiff. (Plaintiff's Depo., pg. 79, ln 9-23; pg. 80, ln 1-20). In addition, the Defendants knew when they represented to the Plaintiff that he would be able to receive similar bonuses of other employees, that this would not happen -- not if the Plaintiff worked the hours that he was told he would be able to work -- there was no way that the Plaintiff would be able to receive bonuses because of the unstable work conditions, and the stability of the work place was directly related to the receipt of bonuses. (Henson Decl., ¶ 7). Therefore, the Defendants knew at the time they made their representations to the Plaintiff during the interview process that they were false, as such the Defendants' Motion for Summary Judgment should be denied.

**Action Upon the False Representation by the Plaintiff**

The Plaintiff acted upon the false representations made by the Defendants to his detriment. The Plaintiff, relying on the representations made to him by the Defendants, quit his job with SYSCO. When the Plaintiff quit his job with SYSCO, he gave up the work schedule that he and his family could handle. The Plaintiff also gave up his three weeks of vacation time.

**Loss, Harm, or Damage Proximately Resulting from the False representation**

As a result of the Plaintiff's reliance on the Defendants' false representations, he was caused to suffer pecuniary loss, missed employment opportunities, expenses, and mental anguish.

    A.    **Plaintiff has alleged sufficient facts to support his claim regarding Defendants' fraudulent misrepresentation as to the working conditions at Merchants' Food Services, and has alleged sufficient facts to support a claim for "promissory fraud."**

The Defendants contend that the Plaintiff's Complaint states a claim for "promissory fraud," in that the allegations of misrepresentation dealt with events that were to occur in the

8

future. "Promissory fraud," is "[a] fraud claim in which the alleged fraud concerns a future promise, as opposed to a present fact...." *Jabour v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 98-D-900-N, 2000 WL 303639, at *7 (M.D. Ala. Feb. 15, 2000). Assuming, *arguendo* that Plaintiff's claims for misrepresentation regarding the number of hours he would work, the flexibility of his schedule, the number of Saturdays he would work, the amount of nights he would work, and the amount of vacation time he would receive, are claims of "promissory fraud," the Defendants' Motion for Summary Judgment is still due to be denied.

In order to prove promissory fraud, "the plaintiff must additionally show that, at the time of the alleged misrepresentation (the promise), the defendant did not intend to do the act or acts promised and intended to deceive the plaintiff." *Jabour* at *7 (quoting *McGriff v. Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir.1997); *Goodyear Tire & Rubber Co. v. Washington*, 719 So.2d 774, 776 (Ala.1998)). The Defendants knew that the representations that they were making to the Plaintiff would never come true. In order for the Plaintiff to have flexibility in his schedule, not work on Saturdays (except for a couple of Saturdays a year), and not work at night on a regular basis, as well as the amount of time he would receive, and when he would receive it, the workplace conditions would have had to have been perfect, just as the Defendants had represented to the Plaintiff. Because the Defendants knew that the conditions were not perfect, and knew of the high rate of turnover in hourly employees, they also knew that the Plaintiff would probably not be able to have the schedule that they had told him he could have, if all of his work was done. The misrepresentations regarding the workplace conditions were made to the Plaintiff willfully and intentionally so as to induce him into leaving SYSCO, and the Defendants knew that there was no way the Plaintiff was going to be able to complete the work on time to be able to have the schedule that was discussed. Therefore, even if this Court

finds that the Plaintiff's Complaint alleges a claim for "promissory fraud," the Defendants' Motion for Summary Judgment should be denied because the Defendants knew that there was no way that the work conditions at Merchants would allow the Plaintiff to have the schedule -- hours per day, vacation time, shift schedule, etc. -- that the parties discussed during the interview process.

> **B.  Plaintiff has alleged sufficient facts to support his claim regarding Defendants' fraudulent misrepresentation as to the workforce at Merchants' Food Services.**

The Plaintiff specifically inquired about the stability of the workforce while interviewing for the position with Merchants. (Plaintiff Depo., pg. 81, ln. 11-23; pg. 82, ln. 1-11). The reason for Plaintiff inquiring about the stability of the workforce at Merchants was because of the importance of having a stable workforce in order to have a smooth running facility. This was especially important considering Defendant Henson, when asked by the Plaintiff about the hours he would be expected to work, told the Plaintiff that, "...he could generally work the schedule he wanted but that he needed to get the work done before he left." (Henson Decl., ¶ 4). The Defendants presented the Plaintiff with the picture of a strong, dependable workforce. However, the Defendants knew at the time that they made this representation to the Plaintiff that this was not true. The reality of the situation was the company had been experiencing a high turn over rate for hourly employees, which both Defendants Mercier and Henson were aware of at the time of their representations to the Plaintiff regarding there being a strong core of employees. (Mercier Decl., ¶ 8; Henson Decl., ¶ 2). In fact, the company had a turnover rate of 233.33% for hourly employees in the receiving department, and 425% for hourly employees in the shipping department for the time frame of January 1, 2003 until June 30, 2005. (Merchants Foodservice Employee Turnover Analysis Report, attached to Plaintiff's Deposition as Exhibit 19). This

information was not only available to the Defendants at the time of the interviewing of the Plaintiff, but was known by the Defendants at the time of the interviewing of the Plaintiff when the misrepresentations regarding the strong core of employees were made to the Plaintiff. As such, Defendants' misrepresentations to the Plaintiff regarding the workforce were intentional, meant solely for the purpose of inducing him to leave his job with SYSCO.

  C. **Plaintiff has alleged sufficient facts to support his claim regarding the Defendants' fraudulent misrepresentation about Merchants' being a "family oriented" business.**

During the course of the interview process, the Defendants, in particular, Mercer, told the Plaintiff that Merchants was a "family oriented" business. This representation was made during the course of the discussion between the parties regarding Plaintiff wanting to make sure that he would still be able to spend the same quality time with his family that he was able to do so while employed with SYSCO. (Plaintiff's Depo., pg. 97; ln 6-17; pg. 102, ln. 12-21). In addition, Mercer admits that he made this representation to the Plaintiff. (Mercer Declaration, attached to the Defendants' Motion for Summary Judgment, ¶ 3). The Defendant's assertion that he considers Merchants to be family oriented, does not negate the effect that this statement had on the Plaintiff. Even though the Defendant contends that he personally considers Merchants to be family oriented, the statement was still made in the context to the Plaintiff that because the company was family oriented, thus intentionally giving the Plaintiff the impression that he would still be able to spend the same amount of time with his family as he was doing at the time of the interview.

## II. DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS TO PLAINTIFF'S FRAUDULENT SUPPRESSION CLAIMS.

During the course of the interviewing of the Plaintiff for the position of Operations Manager at Merchants, the Plaintiff asked if he could tour the warehouse, and Defendant Henson refused because, according to Defendant Henson, an announcement had not be made regarding the company's intent to hire someone for the position, and it would be best to wait until the announcement had been made. (Plaintiff's Depo., pg. 91, ln. 3-13). As such, the Plaintiff never asked again for a tour of the warehouse due to Defendant Henson's statement regarding wanting to wait until an announcement had been made.

If Plaintiff had been afforded an opportunity to tour the facility, meet with the employees, etc., he would have seen the condition of the equipment first hand, maybe even had had a chance to notice the lack of organization and would have had notice of some of the problems that he was going to face upon his acceptance of this position. As it were, the Defendants claims regarding the work conditions was all that the Plaintiff had to go on when deciding whether or not to take the position. The Plaintiff had no rational basis to assume that the Defendants were not being truthful with him regarding the work conditions. As such, the Plaintiff relied, to his detriment, on the Defendants false and misleading statements regarding the work conditions.

The Defendants' refusal to allow the Plaintiff to tour the warehouse done in an attempt to conceal the defective conditions so as to induce the Plaintiff into believing that the work conditions were fine, and all he would have to do is come in keep things at status quo. Instead, the Plaintiff had to deal with repairing machinery, skeleton crews, and instead of keeping things status quo, he had to try to achieve status quo because things were in a state of disarray. The Defendants knew of the conditions at the warehouse, that it would be impracticable, if not impossible for the Plaintiff to get everything done without working late, and that he would be so

far behind when he started that he would probably not be able to receive the bonuses that were so heavily praised by the Defendants to the Plaintiff.

In addition, the Defendants knew that the company's policy for employees to earn vacation time was not conducive with their representation to the Plaintiff that he would be able to take off as much time as he needed. Merchants' Employee Handbook, sets forth its policy for employees' vacation time accrual. (Merchants Employee Handbook, attached as an Exhibit to Plaintiff's Deposition). The Plaintiff did not receive the Employee Handbook until after his acceptance of the offer of employment from Merchants. (Plaintiff's Depo., pg. 130, ln 1-23; pg. 131, ln, 1-23; pg. 132, ln. 1-23; pg. 133, ln. 1-13) Further, the Defendants discussed the company policy with the Plaintiff during the interviewing phase, and assured him that he would not have to worry about having to comply with the policy. (Plaintiff's Depo., pg. 79, ln 9-23; pg. 60, ln 1-15). However, when the Plaintiff requested time off from work, his requests were denied. (Plaintiff's Depo., pg. 159, ln. 22, 23; pg. 160, ln. 1-23; pg. 161, ln. 1-23; pg. 162, ln.1-9). The Defendants explain their refusal to grant the Plaintiff's requests for time off as simply not being opportune for the company at the time of the requests. However, the Defendants, knowing that the Plaintiff would have his work cut out for him once he started due to the unstable work conditions and work force, knew, or should have reasonably known that any requests that the Plaintiff would make for time off would not be granted due to the timing being inopportune.

Further, the Defendants were aware that, under the current conditions of instability, the Plaintiff would likely not be able to improve the workplace enough to be eligible for the bonuses as represented to Plaintiff during the interview process. As such, the concealment of the problems that the company was experiencing, the high turnover rate of hourly employees, etc.,

the Defendants knew that the Plaintiff was entering this position at a detriment, and had to fix the problems before he would be able to receive the type of bonuses discussed in the interview, rather than simply coming in to a good core working environment where he simply needed to maintain status quo.

## CONCLUSION

Based on the foregoing, the Defendants' Motion for Summary Judgment should be denied in its entirety, as there does exist genuine issues of material facts and the Defendants are not entitled to a judgment as a matter of law.

Respectfully submitted this  12  day of July, 2007.

_____
Derrick Blythe, [BLY003]
Attorney for Plaintiffs
126 Marshall Street
Alexander City, AL  35010
(256)234-4101

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record by placing a copy of the same in the U.S. Mail, postage prepaid, on this  12  day of July, 2007, addressed as follows:

Thomas A Davis, Esq.
J. Tobias Dykes, Esq.
CONSTANGY, BROOKS & SMITH, LLC
Suite 900, One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

_____
Derrick Blythe

14